0478

PROFESSIONAL BANKERS CORPORATION, Respondent, v. Drayton B. FLOYD, Appellant.

(331 S. E. (2d) 362)

Court of Appeals

*H. F. Bell,* Chesterfield, and *T. Kenneth Summerford,* Florence, *for appellant.*

*Elbert K. Turbeville* of *Nettles, Turbeville & Reddeck,* Lake City, and *T. Emmet Walsh* of *Gaines & Walsh,* Spartanburg, *for respondent.*

Heard Feb. 20, 1985.

Decided May 21, 1985.

BELL, Judge:

Professional Bankers Corporation sued Drayton Floyd as guarantor of two contracts between Bankers and International Real Estate Consultants, Inc., of which Floyd was president and a principal shareholder. Floyd set up two counterclaims in which he asserted International's rights against Bankers. The case was tried to a jury. At the conclusion of the testimony the trial judge directed a verdict for Bankers on its claim and nonsuited both of Floyd's counterclaims. Floyd appeals. We affirm.

International owned the Summer Sands Beach Club, a hotel in Myrtle Beach. It sold interval interests in units of Summer Sands under time share leases. A time share purchaser was required to make a down payment of at least twenty percent of the cash price of the lease. International financed the remainder, typically over a term of five years.

In September 1976 International entered into two "dealer agreements" with Bankers whereby Bankers agreed to purchase the notes from International's sales of time share leases. The first agreement, dated September 11, provided Bankers would advance thirty percent of the amount financed on each note purchased. The remaining seventy percent would be held in reserve until maturity, payment in full, or repurchase of the note by International, at which time Bankers would remit the amounts it had collected, less its fee, to International. Bankers was to earn seven percent add on interest per annum on each contract purchased under the agreement. The second agreement, executed September 27, differed from the first only by providing a forty percent advance, with a corresponding sixty percent reserve and nine percent add on interest per annum. Floyd personally guaranteed each agreement.

Both agreements required Bankers to service the paper, including collection of payments from time share purchasers. Bankers agreed to furnish International a list of delinquent accounts each month. If an account became more than ninety days overdue, it would be "charged back" to International, which was required to repurchase the account within ten days of the charge back notice. If International failed to repurchase the account, Bankers could discontinue all advances and apply funds otherwise payable to International to the amount owed Bankers.

In June 1977 the Summer Sands hotel was sold to a company called Trident Group. Trident's people managed the hotel for about a year, then vanished. Floyd testified they stripped the hotel of many of its furnishings before leaving and "ran away" with the money they had made selling time share leases. In March 1978, International resumed management of Summer Sands. The following January the hotel's mortgagee filed foreclosure proceedings against International, who in turn filed a Chapter XI bankruptcy petition the next month. In March 1979, Mr. A. B. Wilson took over the day to day operations at Summer Sands because of Floyd's rapidly deteriorating health. In May, the South Carolina Real Estate Commission obtained an order in bankruptcy court enjoining International from further selling time share interests. Finally, in July, one of the owners of the land on which the hotel is located sued for ejectment, and International's bankruptcy petition was dismissed for, among other reasons, its failure to pay the statutory reorganization fee of $25,000.

In 1976 and 1977, Bankers paid International advances and reserve remittances totalling over $113,000. By 1980 all the Summer Sands customers had discontinued payments on their time share leases. Between 1976 and 1980 Bankers had collected over $142,000 from these customers. When the accounts stopped paying and were charged back to International, Bankers claimed it was due $33,443.89 under the terms of the dealer agreements. Since International was in no position to pay, Bankers filed this action against Floyd as its guarantor.

In deciding motions for directed verdict or for nonsuit, the trial judge must consider the evidence and

inferences to be drawn therefrom in the light most favorable to the nonmoving party. If the evidence is susceptible of only one inference, or if there is no evidence to support an essential element of the cause of action, no jury issue exists and the motions are properly granted. *See Stanley Smith & Sons v. Limestone College*, ____, S. C. ____, 322 S. E. (2d) 474 (Ct. App. 1984).

## I.

Bankers' motion for directed verdict on its claim was granted at the close of all the evidence. On appeal Floyd claims the evidence he adduced at trial created a jury issue as to what amount, if any, Bankers was due under the terms of the dealer agreements.

Charles Turner, president of Bankers, testified that under the dealer agreements Bankers would have made about $90,000 had all the paper paid to maturity. Since all the customers did not pay out their accounts, International was credited with over $30,000 in unearned add on interest. After deducting this amount and the excess of the amount actually collected over the amount paid to International, Turner testified that International owed Bankers $33,443.89. Business records substantiating that amount were also in evidence.

Floyd did not dispute these figures at trial. Instead, his counsel cross examined Turner as to the "excess" amount collected by Bankers over the cash advances. At trial and on appeal Floyd argues that Bankers earned substantially more than the seven or nine percent add on interest to which it was entitled under the dealer agreements. To support his position, Floyd refers to a series of computations designed to show the true rate of return Bankers earned on the advances it made was about eighteen percent. These computations are based on the amounts Bankers advanced to International.

Floyd's computations overlook the terms of the dealer agreements, which provided Bankers' add on fee was to be computed on the basis of the amount financed, not the amount advanced to International. At no time did Floyd show that Bankers was not due the sum it claimed under the contract. On the witness stand Floyd conceded he had no evidence that Bankers failed to credit any money it owed International.

Viewed in the light most favorable to Floyd, this evidence establishes that International was indebted to Bankers for $33,443.89 because of its default on the dealer agreements. In his pleadings, Floyd admits the existence of the dealer agreements and his accompanying personal guaranties. The evidence is thus susceptible of but one inference, namely, Bankers was entitled to judgment against Floyd on the guaranty agreements in the amount of $33,443.89. The motion for directed verdict was properly granted.

## II.

Floyd asserted two counterclaims against Bankers. In them he alleged an assignment from International to himself of "the right to institute any cause of action against ... Professional Bankers Corporation, as a result of a breach of [a] contract ... between Professional Bankers Corporation and International Real Estate Consultants, Inc. ...." After Floyd rested his case Bankers successfully moved for a nonsuit on the ground, *inter alia*, that no proof of the alleged assignment was made at trial.

Proof of the assignment was essential to both counterclaims. In the first counterclaim Floyd alleged Bankers breached its contract with International and that the breach was accompanied by a fraudulent act. In the second, Floyd relied on a March 15, 1979 letter from Bankers agreeing to purchase $1,000,000 of paper from Summer Sands Beach Club, providing it was in a position to sell time share interests. Assuming the letter constituted an enforceable agreement, it was between Bankers and International, doing business as Summer Sands. The general rule at common law is that an action on a contract must be brought by the party in whom the legal interest is vested, and this legal interest is ordinarily vested only in the promisee or promisor. Consequently, they or those in privity with them are generally the only persons who can sue on the contract. *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Association, Inc.*, 219 Va. 1001, 254 S. E. (2d) 61 (1979). In each counterclaim Floyd asserted the contractual rights of International. Without an assignment of those rights, he was not the proper party to bring the actions. *See Kunz v.*

*Custer*, 103 Ga. App. 593, 120 S. E. (2d) 186 (1961).

Floyd presented no evidence at trial of the alleged assignment. Rather, he argues the issue of assignment was settled by an order permitting him to amend his answer to include the counterclaims. The order states in part:

> It now appears that the Defendant, Drayton B. Floyd, has received an assignment from the corporation known as International Real Estate Consultants, Inc., of all choices in action, causes of action, right to litigate concerning an alleged breach of contract signed by International Real Estate Consultants, Inc.
>
> It now appears that the Defendant, Drayton B. Floyd, does have a right to file a Counterclaim in the above entitled cause of action and that same is proper in all respects. . . .

Since Bankers failed to appeal this order, Floyd reasons, the fact of assignment is now the law of the case.

An appealable order from which no appeal is taken becomes the law of the case in all subsequent proceedings involving the same parties and the same subject matter. *Matheson v. McCormac*, 187 S. C. 260, 196 S. E. 883 (1938). However, the doctrine operates only as to matters concluded by the unappealed order. *See Dibble v. Sumter Ice & Fuel Co.*, 283 S. C. 278, 322 S. E. (2d) 674 (Ct. App. 1984).

The order in question was not appealable until final judgment. *See Schein v. Lamar*, _____ S. C. _____ 325 S. E. (2d) 573 (Ct. App. 1985) (order allowing amendment to complaint not immediately appealable). Moreover, the order did no more than permit Floyd to amend his answer. The only matter concluded by the order was Floyd's right to file a counterclaim. Bankers' reply denied the allegation of assignment in Floyd's counterclaim, thereby placing it in issue. The order allowing amendment did not relieve Floyd of his burden of proving all the allegations in his counterclaim. Since he failed to prove the assignment, an essential element of both counterclaims, the nonsuits were properly granted. *See Williams v. Metropolitan Life Ins. Co.*, 202 S. C. 384, 25 S. E. (2d) 243 (1943) (not only is it essential that every fact necessary to constitute a cause of action or defense be pleaded, but every such fact, if in issue, must be proved).

The judgment of the circuit court is accordingly Affirmed.

SANDERS, C. J., and SHAW, J., concur.