## 0620

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Appellant v.
Iva N. DEGLMAN, Respondent.

(341 S. E. (2d) 638)

Court of Appeals

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Raymond G. Halford, Sr. Asst. Atty. Gen. Nan L. Black,* and *Asst. Atty. Gen. Ruby E. Brice,* Columbia, *for appellant.*

*Francis T. Draine,* of *Draine & McLaren, P.A.,* Columbia, *for respondent.*

Heard Jan. 24, 1985.

Decided Jan. 27, 1986.

*Per Curiam:*

This appeal concerns a petition for child support filed by the South Carolina Department of Social Services against Iva N. Deglman, the mother of the child involved. DSS, allegedly as assignee of Robert J. Deglman, the child's father, sought to establish a child support obligation for Mrs. Deglman's sixteen-year old daughter, Tracy, who was in the custody of her father. The family court judge dismissed the petition. DSS appeals. We affirm and award double costs to Mrs. Deglman.

Mrs. Deglman obtained a divorce in October 1978. Temporary custody of the couple's two minor children, Robert, Jr., and Tracy, was granted to Mr. Deglman. Mrs. Deglman appealed the amounts of alimony and attorney's fees awarded to her. The Supreme Court reversed and remanded for appropriate awards in *Deglman v. Deglman,* 276 S. C. 600, 281 S. E. (2d) 123 (1981).

Before the hearing on remand, Mr. Deglman commenced a new suit against his former wife. This suit sought to hold Mrs. Deglman in contempt for failure to vacate the marital home pursuant to a prior order, to require her to pay rent for her extended occupancy, and to require her to return to Mr. Deglman $3,200 in bonds allegedly belonging to Tracy Deglman.

This new suit and the hearing on remand were consolidated and subsequently disposed of by an April 15, 1982 order. Mrs. Deglman was awarded increased alimony and attorney's fees. The judge ordered Mrs. Deglman to vacate

the marital home, and offset the back alimony he awarded her by the amount of house payments made by Mr. Deglman during her extended occupancy. In addition, the judge found that $3,200 in government bonds held by Mrs. Deglman were purchased for Tracy's education. Mr. and Mrs. Deglman were ordered to convert the bonds to a higher interest-bearing vehicle to be used for that purpose.

On October 1, 1981, twelve days before filing the new action against his former wife, Mr. Deglman allegedly assigned his "child support rights" to his employer, DSS. DSS sued Mrs. Deglman for child support on April 27, 1982, immediately following the conclusion of Mr. Deglman's suit and the hearing on remand.

Following a hearing on May 20, 1982, the family court judge dismissed the action. He found DSS collaterally estopped from litigating the issue of child support, since this issue could have been raised in previous litigation.

DSS purports to bring this action as the assignee of Mr. Deglman's "child support rights." At oral argument, DSS took the position that this suit is authorized by 42 U.S.C. Section 654. That statute, contained within legislation authorizing Aid to Families with Dependent Children (AFDC), provides:

> [T]he child support collection or paternity determination services established under the [state] plan shall be made available to any individual not otherwise eligible for such services upon application filed by such individual with the state, including support collection services for the spouse (or former spouse) with whom the absent parent's child is living (but only if a support obligation has been established with respect to such spouse, and only if the support obligation established with respect to the child is being enforced under the plan).

42 U.S.C. Section 654(6)(A).[1]

The legislative history of this section indicates child support collection services were extended to non-AFDC families

---

[1] This section was amended by the Tax Equity and Fiscal Responsibility Act of 1982. Pub. L. No. 97-248, Section 171(a). The amended section makes provision of spousal support collection services optional with the states.

for enforcement of support due from absent parents to "avoid the necessity of applying for welfare in the first place." Report of the Committee on Finance, United States Senate, to Accompany H.R. 17045 ..., Senate Report No. 93-1356, 93rd Cong., 2d Sess. 55 (1974), U. S. Code Cong. & Admin. News (1974) p. 8133.

> The purpose of the requirement is to assure that abandoned families with children have access to child support services before they are forced to apply for welfare.... [A]ccess to these services often means the difference between a family's reliance on welfare support and being supported by a legally responsible parent. Most of the families being served are marginally eligible for AFDC, and without child support services are likely to end up on the welfare rolls.

Report of the Committee on Finance, United States Senate ... on H.R. 3434 ..., Senate Report No. 96-336, 96th Cong., 1st Sess. 78 (1979).

We think it plain that the purpose of the statute is to make support collection services available when the following conditions are met: (1) a support obligation must have been established against a legally responsible parent; (2) the applicant must either be eligible for AFDC or, if not presently eligible, likely to need public welfare assistance if support collection services are not made available; and (3) the support collection services must be necessary to meet a present need of a dependent child for support. *See Morris v. Cohen*, 149 Cal. App. (3d) 507, 196 Cal. Rptr. 834 (1983); *cert. denied sub nom., California v. Cohen*, _____ U. S. _____, 105 S. Ct. 243, 83 L. Ed. (2d) 182 (1984); *State of New Jersey v. Dept. of Health and Human Services*, 670 F. (2d) 1262 (3d Cir. 1981); *Carter v. Morrow*, 562 F. Supp. 311 (W.D.N.C. 1983).

In this case, DSS makes no claim that Mr. Deglman is marginally eligible for AFDC benefits or that he will have to rely on welfare assistance if DSS does not obtain child support from Mrs. Deglman. Likewise, the record fails to reveal any basis for a finding that Mr. Deglman is in immediate need of child support payments from an absent parent in order to provide for his minor child. DSS

has simply failed to explain how the statute entitles Mr. Deglman, an employee of the Department with a monthly gross income of $3,309, to avail himself of the resources of the State to bring this action. Mr. Deglman obviously does not fall within the intended class of persons who may be forced to apply for welfare if assistance in obtaining child support is not provided.

Furthermore, the financial declarations and other facts in the record show no basis for DSS to believe a child support obligation could be established against Mrs. Deglman. There is a substantial disparity of income, assets, and earning potential between Mr. and Mrs. Deglman. At the time of the hearing, Mr. Deglman had a monthly gross income of $3,309. Mrs. Deglman, who began working as a clerk in a state agency in January 1980, had a gross monthly salary of $657 in addition to $625 monthly alimony, first awarded in May 1982, for a total monthly gross income of $1,282. The Supreme Court previously found Mrs. Deglman to be in poor health from a degenerative spinal condition and emotional problems. In addition to their incomes, Mr. Deglman's financial declaration listed property worth $91,635.34, while Mrs. Deglman listed property worth $4,353.63. At the time of the hearing, Tracy had a part-time job, was enrolled in public school, was in good health, and was nearly seventeen years old. She lived in a condominium at Lake Murray with her father, drove her own car, and had access to his boat. These facts suggest no basis for the present suit by DSS.

Finally, DSS brought this action for child support based on an alleged assignment from Mr. Deglman. The record does not indicate the alleged assignment was offered or proved at the hearing. The only references to the assignment are statements in DSS's pleading and by the circuit judge that a copy of the assignment was attached to the complaint. Mrs. Deglman's answer denied the assignment, thereby placing it in issue. Proof of a valid assignment was therefore essential to maintain this action. *Professional Bankers Corp. v. Floyd*, 285 S. C. 607, 331 S. E. (2d) 362 (Ct. App. 1985).

Since DSS failed to establish a valid assignment, its burden of proving all of the material allegations of the complaint has not been met. *Professional Bankers Corp. v.*

*Floyd, supra; Williams v. Metropolitan Life Ins. Co.,* 202 S. C. 384, 25 S. E. (2d) 243 (1943). Therefore, the circuit judge's dismissal of DSS's action must also be affirmed on the ground that DSS failed to prove an essential element of its action.

We conclude with the observation that this is a suit ▪ which should never have been brought. The facts of the case cast serious doubt on the judgment of the attorneys who agreed to institute the action on behalf of Mr. Deglman. The power of government is abused when, as here, it is used by one private citizen to harass another with meritless litigation.

Double costs are awarded to the respondent.

Affirmed.