EGRETS POINTE TOWNHOUSES PROPERTY OWNERS ASSOCIATION, INC., Erwin F. Dillard, Donald White, and Richard Hill, Individually and in their Representative Capacity as the Board of Directors of Egrets Pointe Townhouses Property Owners Association, Inc., Plaintiffs,

v.

FAIRFIELD COMMUNITIES, INC., Defendants.

Civ. A. No. 2:93–2281–18.

United States District Court,
D. South Carolina,
Charleston Division.

Dec. 9, 1994.

William Stuart Duncan, Michael Kurt Kendree, Georgetown, SC, for plaintiffs.

William Gordon Lyles, III, Columbia, SC, Paul A. Dominick, Jay S. Masty, Charleston, SC, for defendants.

## ORDER

NORTON, District Judge.

This case is before this court on cross motions for summary judgment under Fed. R.Civ.P. 56(c). The dispute is between Fairfield Communities (Fairfield), the developer of a time share community located on Edisto Island called Egrets Pointe Townhouses (Egrets Pointe), and the Egrets Pointe Townhouses Property Owners Association (Association) along with several individual members of the Association's Board of Directors. Although several issues are addressed in this Order, the primary issue is the applicability to Egrets Pointe of the South Carolina Horizontal Property Act, S.C.Code Ann. §§ 27–31–10 to 27–31–440 (Law.Co-op.1991 & Supp.1993). For the reasons stated below, this court grants Defendant's Motion for Summary Judgment.

## I. FACTS

Egrets Pointe is an interval ownership (timeshare) property developed on Edisto Island by Fairfield Communities. It is one of many communities that comprise a larger resort called Fairfield Ocean Ridge. Although no master deed is on record at the Colleton County Courthouse for Egrets Pointe, Fairfield recorded a "Supplemental Declaration of Covenants and Restrictions for Egrets Pointe Townhouses" (Declarations) on August 26, 1986, to which was appended the "Bylaws of Egrets Pointe Townhouses Property Association, Inc." (Bylaws) and the "Initial Rules and Regulations, Egrets Pointe Townhouses Property Association, Inc." (Rules and Regulations). These three documents have governed the property since its development. The Declarations provided for the imposition of maintenance fees against owners of unit weeks at the property, but further provided that Fairfield would not be responsible for maintenance fees for unit weeks owned by Fairfield. When individuals agreed to purchase unit weeks at Egrets Pointe, they signed three documents: (1) an installment sales contract; (2) an Interval Ownership Purchaser's Affidavit; and (3) a Certificate of Benefits. Although no master deed was ever recorded, an early edition of the Interval Ownership Purchaser's Affidavit drafted by Fairfield and signed by some purchasers listed, among other documents, a "Declarations of Horizontal Property Regime" as being recorded in the county clerk's office and available for review by all purchasers at the Fairfield Ocean Ridge Office. There is no evidence that such a document ever existed and therefore, it is Fairfield's position that reference to a nonexistent document was an technical oversight that Fairfield corrected in these form affidavits in 1992.

As part of the development of Egrets Pointe, Fairfield made available several programs in order to induce the Association to hire Fairfield as the property's manager after the completion of construction. Two of these programs are at issue in this action. The first program, called Fairfield Exchange ("FAX"), allowed the Egrets Pointe owners to exchange time share weeks with other Fairfield time share locations at a discount rate. The second program, called Fairfield USA ("FUSA"), permitted the Egrets Pointe owners to use the numerous recreational facilities at Fairfield Ocean Ridge at discount rates. The FAX program was briefly mentioned in a separate "Certificate of Benefits" that specifically stated that Fairfield could change the conditions of any program at its discretion. None of the documents limit the rates that Fairfield can assess for these programs.

Fairfield managed Egrets Pointe from its inception until 1993 at which point the Association provided written notice of its intent not to renew the management contract with Fairfield. In July the Association did not renew the contract with Fairfield. Instead, the Association contracted with Southern

Property (Southern) to assume management of the property on July 14, 1993. When the Association did not renew the management contract with Fairfield, the Association and the Egrets Pointe residents lost the discount prices associated with Fairfield's FAX and FUSA programs. Although the programs were still available to the residents, since Fairfield was not on site as the property manager it increased the fees associated with these programs due to the increased transaction costs. This lawsuit was filed shortly after the change in management.

Plaintiffs' Motion for Summary Judgment requests that this court find that Egrets Pointe, as developed by Fairfield Communities, is governed by the South Carolina Horizontal Property Act ("HPA") and that Fairfield has breached the master deed, Declarations, and Bylaws and violated the HPA. It is Plaintiffs' position that a finding that Egrets Pointe is governed by the HPA would render Fairfield liable to the Association for maintenance and regime fees on its units. Additionally, the Association brought causes of an action for an accounting, interference with prospective contractual relations, and breach of contract.

Defendant denied all claims of Plaintiffs and moved for summary judgment as to the following: (1) that Fairfield is not required to pay maintenance fees at Egrets Pointe because Egrets Pointe is not a horizontal property as defined by the South Carolina HPA; (2) that there has been no tortious interference with prospective contractual relations because Egrets has an existing contract with Southern; (3) that any claim for interference with contractual relations is precluded by the fact that the contract between Southern and Egrets has not been breached; (4) that the Association lacks standing to assert the breach of contract claims of the individual property owners; (5) that Fairfield has acted within the terms and conditions of the installment sales contracts and related documents provided to the individual owners; and (6) that Fairfield is not obligated to pay maintenance fees thus rendering an accounting unnecessary.

## II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. CenTra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

## III. ANALYSIS

### A. The Horizontal Property Act

■ This court finds that Egrets Pointe is not a horizontal property regime as defined by the S.C.Code and therefore is not subject to the provisions of the South Carolina Horizontal Property Act. The South Carolina Code states:

> Whenever a lessee, sole owner or the co-owner of property expressly declare, through the recordation of a master deed or lease, which **shall** set forth the particulars enumerated in § 27–31–100, their desire to submit their property to the regime established by this chapter, there shall thereby be established a horizontal property regime.

S.C.Code Ann. § 27–31–30 (Law.Co-op.1991) (emphasis added). In order to establish a horizontal property regime, a master deed for the property must be recorded and compliance with the requirements of section 27–

31–100 is mandatory. Section 27–31–100 states in part:

> The master deed or lease creating and establishing the horizontal property regime shall be executed by the owner or owners of the real property making up. the regime and **shall be recorded** with the register of mesne conveyance or clerk of court of the county where such property is located. The master deed or lease shall express the following particulars:
>
> .    .    .    .    .
>
> (e) The name by which the horizontal property regime is to be known followed by the words "HORIZONTAL PROPERTY REGIME."

S.C.Code Ann. § 27–31–100 (Law.Co-op.1991) (emphasis added).

In *Battery Homeowners Ass'n v. Lincoln Fin. Resources,* 309 S.C. 247, 422 S.E.2d 93 (1992), the South Carolina Supreme Court held that the failure of a master deed to include the above language was adequate grounds to reverse a master's ruling that held otherwise in spite of the absence of the words "HORIZONTAL PROPERTY REGIME" on the property's master deed. *Id.* 422 S.E.2d at 95. The court stated:

> Section 27–31–100 states the master deed must expressly state the name by which the property is known and include the words "HORIZONTAL PROPERTY REGIME."
>
> The Battery's master deed does not state the Battery is a horizontal property regime. Therefore, the Horizontal Property Act does not apply to the Battery. The master erred in holding that the Battery is a horizontal property and we reverse as to this portion of his order.

*Id.* at 95. In *Battery Homeowners,* there was a recorded master deed, but that deed did not have the words "HORIZONTAL PROPERTY REGIME" inscribed on it. In this case, there is not even a master deed for Egrets Pointe recorded at the courthouse. Therefore, this court finds that · Egrets Pointe is not a horizontal property regime under South Carolina law and Fairfield is not

liable to the Association for any fees under the HPA.

Plaintiffs further argue that Defendant is bound by the fact that some of the early editions of the Purchaser's Affidavit provided to the buyers of interval ownerships at Egrets Pointe referenced a "Declarations of Horizontal Property Regime." Defendant explains that the reference to that inexistent document was inadvertently left in the affidavit as an oversight when it was carried over from standard forms used by Fairfield for its other properties developed under the South Carolina Horizontal Property Act. The affidavits at issue were entitled "Fairfield Ocean Ridge Interval Ownership Purchaser's Affidavit" and in part stated:

> I/We further acknowledge that prior to signing the installment contract for the purchase of the above described property, we were informed that the following documents applicable to *EGRETS POINTE* [1] were recorded and/or would be recorded in the County Clerk of Court's office and are available for our reading at the office of Fairfield Ocean Ridge:
>
> A.  Declarations of Horizontal Property Regime Master Deed and By–Laws
>
> B.  Recorded Plat of Subject Subdivision
>
> C.  Declaration of Covenants and Restriction for Fairfield Ocean Ridge.

It is clear from the one page Purchaser's Affidavit that the document was a standard boilerplate form used by Fairfield for all of its properties at Fairfield Ocean Ridge. There are numerous blanks on the form which have obviously been typed in with the words "EGRETS POINTE," and various building and unit numbers. Further, it is believable that considering the nature of this form and the deposition of a Senior Vice President of Fairfield Communities, that the reference to a "Declarations of Horizontal Property Regime" was a mistake. Such a mistake does not amount to a "genuine issue of material fact," and therefore, this court finds that Egrets Pointe is not subject to the South Carolina Horizontal Property Act simply because of a drafting oversight.

---

[1]. The words "EGRETS POINTE" are typed on this blank line.

■ Plaintiffs further argue that Fairfield should be collaterally estopped by a previous state court order from denying that Egrets Pointe is a horizontal property regime. In 1993, when Fairfield sponsored three Egrets Pointe homeowners in an attempt to gain control of the Board of Directors of the Association, the incumbent Board members and the Association filed suit for a temporary restraining order preventing those three members from acting as board members and invalidating a special meeting in which they were elected. The order granting the TRO stated that "Egrets Pointe Townhouses is a time share condominium complex organized pursuant to the South Carolina Horizontal Property Act." *Egrets Pointe Townhouses Property Owners Ass'n, Inc., v. Craig,* Order Granting Temporary Restraining Order, No. 93–CP–15–50 (14th Cir.S.C. July 21, 1993).

This court finds the TRO order cannot be asserted to collaterally estop Fairfield in this litigation. "Whether a party adversely affected had a full and fair opportunity to litigate relevant issues effectively in a prior trial is a basic consideration in the doctrine of collateral estoppel." *Westbury v. Bauer,* 293 S.C. 224, 359 S.E.2d 515, 516 (Ct.App. 1987). "In order, however, to assert collateral estoppel successfully, the party seeking issue preclusion still must show that the issue was actually litigated and directly determined in the prior action and that the matter or fact directly in issue was necessary to support the first judgment." *Beall v. Doe,* 281 S.C. 363, 315 S.E.2d 186, 190 (Ct.App. 1984). One sentence in a temporary restraining order stating that Egrets Pointe was organized pursuant to the HPA is dicta at best. The legal status of Egrets Pointe was not a litigated issue in the state court proceeding nor was any analysis of Egrets Pointe necessary to support the judge's decision to issue the TRO. Most importantly, however, although Fairfield may have sponsored those three individuals and paid their legal expenses, collateral estoppel cannot apply to Fairfield because Fairfield was not a party to that proceeding—a point conceded by Plaintiffs.

■ Plaintiffs also assert that the Egrets Pointe Declarations and Bylaws and the orig-inal management contract between Egrets Pointe and Fairfield impose an obligation upon Fairfield for the disputed fees. Examinations of these documents reveal no such obligation. The Declarations clearly exempt both the Association and Fairfield from any maintenance fee assessments. The Declarations state: "No maintenance fee shall be assessed for any unit week conveyed to the Association. No maintenance fee shall be assessed against any week owned by the Developer." The word "developer" is earlier defined as "Fairfield Ocean Ridge, Inc., a South Carolina corporation, its successors and assigns." Finally, a close examination of the Bylaws and the management contract do not reveal any language that imposes any financial responsibility on Fairfield for maintenance fees. Therefore, Plaintiffs' claim for management fees based on the documents governing Egrets Pointe is also without merit.

### B. Interference with Prospective Contractual Relations

This court finds that Plaintiffs' cannot succeed on their claim for interference with prospective contractual relations. Plaintiffs assert this cause of action against Fairfield based on allegations that Fairfield's failure to turn over the financial management documents of Egrets Pointe to Southern has detrimentally interfered with the operation of Egrets Pointe and Southern's ability to effectively manage the property. According to Plaintiffs, this allegedly improper conduct entitles them to damages because it has interfered with and harmed their contractual business relationship with Southern.

■ With respect to this cause of action, the South Carolina Supreme Court stated:

To recover on a cause of action for intentional interference with **prospective contractual relations,** we hold that plaintiff must prove: (1) the defendant intentionally interfered with the plaintiff's **potential** contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff.

*Crandall Corp. v. Navistar Int'l Transp. Corp.*, 302 S.C. 265, 395 S.E.2d 179, 180 (1990) (emphasis added). To be successful on this claim, Plaintiffs assert that the word "potential" should be interpreted by this court to mean not only "future" contractual relations, but also "full" contractual relations.

This court refuses to expand this tort as enunciated by the South Carolina Supreme Court in *Crandall* to encompass the interpretation advocated by Plaintiffs. *Crandall* and other authority discussing this tort usually require the aggrieved party to have been unsuccessful in acquiring an expected contract due to a third party's intentional and wrongful actions. *See Crandall*, 395 S.E.2d at 180–81; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 130, at 1006 (5th ed. 1984) ("For the most part the 'expectancies' thus protected have been those of future contractual relations. . . .").

█ Further, a standard dictionary definition does not encompass Plaintiffs' interpretation of the word "potential" as it is used in the context of elements of the tort in *Crandall*. The dictionary defines the adjective "potential" as meaning "that can, but has not yet, come into being; possible; latent; unrealized; undeveloped." *Webster's New World Dictionary* 1056 (3d ed. 1988). In this case, Southern entered into a contract with the Association on February 20, 1993, for management of Egrets Pointe commencing in July. Plaintiffs filed this lawsuit on September 2, 1993. Because there was a valid contract in existence between Southern and the Association at the inception of this action, this court finds that the existence of that contract precludes any recovery on a claim for interference with prospective contractual relations.

### C. Interference With Contractual Relations

█ This court finds that the tort of interference with contractual relations is not applicable to this lawsuit. Unlike the tort of interference with prospective contractual relations, which occurs when a third party interferes with another's justifiable expectation of the procurement of a contract, this tort results when a third party wrongfully induces the breach of an existing contract. The South Carolina Supreme Court stated:

> To establish an action for intentional interference with a contract, the plaintiff must establish[:] (1) the existence of the contract; (2) the wrongdoer's knowledge of the contract; (3) **the intentional procurement of its breach;** (4) the absence of justification; (5) damages.

*Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 287 S.C. 190, 336 S.E.2d 472, 473 (1985) (citing *DeBerry v. McCain*, 275 S.C. 569, 274 S.E.2d 293, 296 (1981)) (emphasis added).

█ With respect to this tort, Plaintiffs acknowledge that the contract with Southern has not been "breached" in the traditional meaning of the word. Instead, Plaintiffs argue that a "breach" in the form of a "hindrance" has occurred by Fairfield's failure to turn over requested documents. In other words, Plaintiffs argue that a breach of contract "exists in the '[p]revention or hindrance by party to contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party or the discharge of a duty by him.'" (Pls.Mem.Opp'n Summ.J. 4) (quoting *Black's Law Dictionary* 171 (5th ed. 1979)).

Defendant prevails with respect to this claim because there has been no breach of the contract between Southern and the Association, and further, Fairfield is not a party to that contract. As previously stated, because the contract between Southern and the Association was still in existence at the initiation of this action and there has been no breach, any claim for this cause of action fails under the third prong of the test clearly set forth in *Todd*. Even if Defendant's failure to turn over requested documents constitutes a hindrance as enunciated by the *Black's Law* definition relied on by Plaintiffs, Plaintiffs cannot prevail on that argument because Fairfield was not a party to the contract

between the Association and Southern as the definition would require.

### D. The FAX and FUSA Programs

■ This court finds that Defendant has not breached the installment sales contracts by increasing the price for the benefits of the FAX and FUSA programs. The installment sales contracts are silent on the FAX and FUSA programs although these contracts reference the Declarations and Bylaws. The Declarations allude to the FUSA program by stating that purchasers of unit weeks at Egrets Pointe "shall be entitled to use the recreational facilities at Fairfield Ocean Ridge...." However, neither the Declarations nor the Bylaws mention the FAX program, and the Bylaws do not mention the FUSA program. Regardless, all Egrets Pointe documentation is silent as to any prohibition against Fairfield's increasing the fees associated with these programs. On the other hand, copies of the "Certificate of Benefits" issued to all Egrets Pointe unit week purchasers discuss the FAX benefits and clearly state that "Fairfield has the right to **create, cancel or change** the conditions of **any program** it deems necessary." (emphasis added).

■ Parties have the right to make their own contract, and it is not the function of the court to rewrite the terms of an agreement. *See Gambrell v. Travelers Ins. Cos.,* 280 S.C. 69, 310 S.E.2d 814 (1983). If a contract's language is clear and unambiguous, that language alone determines the contract's force and effect. *United Dominion Realty Trust, Inc. v. Wal–Mart Stores, Inc.,* 307 S.C. 102, 413 S.E.2d 866, 868 (Ct.App. 1992).

In this case, the installment sales contracts allegedly breached by Defendant are silent on the price terms of the FAX and FUSA programs. It is undisputed that the programs are still available to the Plaintiffs although at an elevated price. Absent any provisions addressing FAX and FUSA in the installment sales contracts, Defendant cannot be held to have breached those contracts by increasing the fees associated with those programs when such an act is not prohibited by nor mentioned in the contracts. This is especially true in light of the language in the Certificate of Benefits which specifically allow changes and even cancellation of "any" Fairfield program. This court finds that Fairfield has not breached any contractual agreement by increasing the fees it charges the Egrets Pointe unit week owners for the FAX and FUSA programs.

■ Even if the Defendant had breached the installment sales contracts of the unit week purchasers, this court finds that neither the Association nor its board members have the requisite standing to assert the breach of contract claims of the individual unit week purchasers. Without an assignment, a nonparty to a contract does not have standing to sue on the contract. "The general rule at common law is that an action on a contract must be brought by the party in whom the legal interest is vested, and this legal interest is ordinarily vested only in the promisee or promisor. Consequently, they or those in privity with them are generally the only persons who can sue on the contract." *Professional Bankers Corp. v. Floyd,* 285 S.C. 607, 331 S.E.2d 362, 364 (Ct.App.1985). The parties to the installment sales contracts were Fairfield and the individual purchasers, not the Association. Therefore, only those individuals[2] and Fairfield are the appropriate parties to maintain any breach of contract action concerning the installment sales contracts.

### IV. CONCLUSION

For the foregoing reasons, it is therefore

**ORDERED** that Plaintiff's Motion for Summary Judgment be **DENIED,**

---

**2.** This court recognizes that Plaintiffs Dillard, White, and Hill have sued in their individual capacity as unit week owners in addition to their representative capacity as members of the Board. However, absent a finding of breach of contract

**ORDERED** that Defendant's Motion for Summary Judgment be **GRANTED.**[3]

**AND IT IS SO ORDERED.**

by this court, Plaintiffs' claims in their individual capacity are unsuccessful.

3. This court finds an accounting is unnecessary because Defendant agreed at oral argument to provide Plaintiffs with financial information records sought by them and because this court finds Defendant does not owe any fees to Plaintiff.