**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THEODORE POTTER; KEVIN POTTER,
Plaintiffs-Appellants,

and

HARRY H. POTTER; MARGUERITE C.
POTTER,
Plaintiffs,

v.

CRESTWOOD GOLF CLUB,
INCORPORATED; CRESTWOOD
PARTNERSHIP; CLAUDE MCCAIN;

GEORGE SPRUCE MCCAIN; JOHN
BOYD; WALTER BRYANT; DALE
BRYANT,
Defendants-Appellees,

and

C. W. CARTER; CARTER'S PEST
CONTROL; SOUTH CAROLINA NATIONAL
BANK; MARTIN, THOMPSON AND
WILKINSON; ERWIN THOMPSON; JACK
DICKEY; DICKEY COMPANY,
Defendants.

No. 95-2451

HARRY H. POTTER; MARGUERITE C.
POTTER; THEODORE POTTER; KEVIN
POTTER,
Plaintiffs-Appellants,

v.

CRESTWOOD GOLF CLUB,
INCORPORATED; CRESTWOOD
PARTNERSHIP; CLAUDE MCCAIN;
GEORGE SPRUCE MCCAIN; JOHN
BOYD; WALTER BRYANT; DALE                                          No. 95-2881
BRYANT,
Defendants-Appellees,

and

C. W. CARTER; CARTER'S PEST
CONTROL; SOUTH CAROLINA NATIONAL
BANK; MARTIN, THOMPSON AND
WILKINSON; ERWIN THOMPSON; JACK
DICKEY; DICKEY COMPANY,
Defendants.

Appeals from the United States District Court
for the District of South Carolina, at Aiken.
Cameron McGowan Currie, District Judge.
(CA-93-2149-1-22)

Submitted: December 10, 1996

Decided: January 21, 1997

Before ERVIN, NIEMEYER, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

2

**COUNSEL**

Theodore Potter, Kevin Potter, Harry H. Potter, Marguerite C. Potter, Appellants Pro Se. James Drayton Nance, HENDERSON & SALLEY, Aiken, South Carolina; James Donovan Mosteller, III, AUGUSTA FIBERGLASS, Blackville, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Harry, Marguerite, Theodore, and Kevin Potter ("the Potters") appeal from the district court's orders in their breach of contract action. We affirm.

Theodore and Dale Potter* purchased the land and improvements of the Crestwood Golf Club from the shareholders and partners of the Crestwood Partnership ("the Crestwood Sellers"). The Potters purchased the personal assets of the golf club, such as the golf course maintenance equipment, membership contracts, leases, and equipment warranties from the Crestwood Golf Club, Inc. The Potters were the actual purchasers of the assets of the Crestwood Sellers. Harry and Marguerite Potter (parents of Theodore Potter), however, were the guarantors of the debt incurred in the sale. Also, at the time of the purchase, the Crestwood Golf Club, Inc. was subject to an existing mortgage lien to the South Carolina National Bank ("SCNB") and the sale of the golf club was subject to this lien.

Subsequent to the sale, the Potters became dissatisfied with their purchase. Several lawsuits ensued both in state and federal court. In this action, Theodore, Marguerite, and Harry Potter filed a civil com-

_____

*Dale Potter was not a party in this action.

3

plaint based on diversity jurisdiction against the Defendants alleging mail fraud, breach of contract, and negligence. The complaint was amended at trial to include common law fraud. The court subsequently added Kevin Potter--another son of Harry and Marguerite Potter--as a Plaintiff based upon an assignment of interest from Harry and Theodore Potter to Kevin Potter.

At trial, the court dismissed Harry and Marguerite Potter as Plaintiffs. The court granted the Defendants' motion for a directed verdict on the Potters' fraud claims, and the Potters elected to pursue the remedy of rescission. The jury found for the Potters against the Crestwood Sellers. The jury found that the Potters were entitled to rescission of the contract as it applied to Theodore Potter's interest in the land with improvements. The jury granted $6000 rescission damages from the Crestwood Sellers to Kevin Potter based upon Theodore Potter's assignment of his interest in the breach of contract claim. As to the Potters' claims against the Crestwood Golf Club, Inc., the jury found against the Potters.

The court accepted the jury's verdict and ordered a partial rescission of the sale contract as it applied to the land with improvements. The court subsequently granted the Defendants' motion to offset the rescission judgment, yet to be entered, by the $25,000 paid to the Potters by Co-Defendant Carter's Pest Control. Finally, the court denied the Potters' cross-motion to amend the judgment. Kevin and Theodore Potter timely appealed from the court's order denying their cross-motion to amend the judgment and granting the Defendants' motion to offset the rescission judgment by $25,000.

Subsequently, the court held a hearing to determine what amount to award Theodore Potter concerning the return of his down payment. The court entered an amended judgment dismissing Harry and Marguerite Potter as Plaintiffs in accordance with the court's oral ruling. As to the rescission of the sale contract, the court awarded Theodore Potter $22,069.42. The court also awarded Kevin Potter $6000 rescission damages from the Crestwood Sellers. Kevin, Theodore, Harry, and Marguerite Potter timely appealed the court's final order.

On appeal, the Potters claim that: (1) the court unjustly dismissed Harry and Marguerite Potter as Plaintiffs; (2) the court erred by grant-

ing a directed verdict on the Potters' fraud claims; and (3) the damages awarded by the court are inadequate.

The Potters claim that the district court erroneously dismissed Harry and Marguerite Potter as Plaintiffs. Harry and Marguerite Potter's only potential liability arose from guaranteeing promissory notes to SCNB. See First Federal Sav. & Loan Ass'n v. Dangerfield, 414 S.E.2d 590, 594 (S.C. Ct. App. 1992). At trial, the only remaining claim before the court was the breach of contract action. Harry and Marguerite Potter, however, were not parties to the sale contract, and therefore, could not raise a breach of contract claim. Professional Bankers Corp. v. Floyd, 331 S.E.2d 362, 364 (S.C. Ct. App. 1985). Further, Harry and Marguerite Potter cannot assert the contractual rights of Theodore Potter without an assignment of those rights. Id. at 365. Hence, Harry and Marguerite Potter were not the proper parties to bring the breach of contract claim. Id.

On appeal, the Potters claim that Harry and Marguerite Potter had a contractual relationship with the Crestwood Sellers based on their guarantees. However, this issue was not properly raised before the trial court and the Potters do not present exceptional circumstances for noticing the issue on appeal. See United States v. One 1971 Mercedes Benz 2-Door Coupe, Serial No. 11304412023280 , 542 F.2d 912, 915 (4th Cir. 1976) (citing United States v. Chesapeake & O. Ry. Co., 215 F.2d 213 (4th Cir. 1954)); State v. Williams, 401 S.E.2d 168, 169 (S.C. 1991). Therefore, we find that the district court's dismissal of Harry and Marguerite Potter as Plaintiffs was correct.

The Potters claim that the trial court erred by granting the Crestwood Sellers a directed verdict on the cause of action for common law fraud. On appeal, an order granting a directed verdict is reviewed de novo. Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1055 (4th Cir.), cert. denied, 429 U.S. 980 (1976). If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for a directed verdict should be denied. See Lust v. Clark Equip. Co., 792 F.2d 436, 437-38 (4th Cir. 1986); Adams v. G.J. Creel & Sons, Inc., 465 S.E.2d 84, 85 (S.C. 1995). The evidence and all reasonable inferences therefrom are reviewed in the light most favorable to the non-moving party. Love v. Gamble, 448 S.E.2d 876, 879 (S.C. Ct. App. 1994). This does not mean that the

5

court should ignore facts unfavorable to the opposing party. Id. "In essence, the court must determine whether a verdict for the opposing party `would be reasonably possible under the facts as liberally construed in his favor.'" Id. (quoting Bultman v. Barber, 281 S.E.2d 791, 792 (S.C. 1981)).

The Potters claim four instances of fraud committed by the Crestwood Sellers. The Potters claim that the Crestwood Sellers fraudulently: (1) concealed the original appraisal of the Crestwood golf course from them prior to the sale; (2) represented the existence of a full service restaurant located in the clubhouse on the property; (3) overstated the number of Crestwood Golf Club members; and (4) represented that all the transferred assets were maintained in good operating condition.

In order to recover in an action for fraud and deceit based upon misrepresentation, the following elements must be shown by clear, cogent, and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard for its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. Failure to prove any one of the foregoing elements is fatal to recovery. O'Shields v. Southern Fountain Mobile Homes, Inc., 204 S.E.2d 50, 52 (S.C. 1974).

The Potters failed to establish that the Crestwood Sellers knowingly concealed the original appraisal or knowingly misrepresented the existence of a full service restaurant on the Crestwood property. Further, the Potters could not have relied on the alleged misrepresentation of the number of existing Crestwood members or statements regarding the maintenance of the transferred assets. Because the evidence did not present more than one inference creating an issue for the jury, the district court did not err by granting the Defendants a directed verdict on the fraud claims. See Lust , 792 F.2d at 437-38; Adams, 465 S.E.2d at 85.

Finally, the Potters claim that the jury's verdict of rescission damages was grossly inadequate. The jury awarded Kevin Potter, as assignee of Theodore Potter, $6000 in rescission damages. The Pot-

6

ters contend that the trial court should have granted their request for additur or a new trial. In general, a jury's determination of damages is entitled to substantial deference. Rush v. Blanchard, 426 S.E.2d 802, 805 (S.C. 1993). The denial of a motion for a new trial based on the inadequacy of the jury's verdict is within the trial court's discretion, and, absent an abuse of discretion, it will not be reversed on appeal. Cock-n-Bull Steak House, Inc. v. Generali Ins. Co., 466 S.E.2d 727, 731 (S.C. 1996). Substantial evidence supports the jury's verdict and we find that the district court did not err in denying the Potters' motion for a new trial based on the inadequacy of the jury's verdict.

Further, the court's calculation of the portion of the down payment to return to Theodore Potter was correct. The total purchase price of the Crestwood property was $412,315.22. Of the total purchase price, $310,000 was allocated to the sale of the land with improvements; therefore, 75.19% of the total purchase price was allocated to the sale of the land with improvements. The total cash down payment paid by the purchasers, including closing costs, was $125,201.26. Thus, 75.19% of the down payment, $94,138.88, was allocated to the sale of the land with improvements. One-half of that amount, $47,069.42 represents Theodore Potter's one-half interest in the land with improvements. After offsetting that amount by the $25,000 received as settlement from Co-Defendant Carter's Pest Control, Theodore Potter is entitled to $22,069.42.

The Potters claim that the court erred by offsetting the entire $25,000 received as a settlement from Carter's Pest Control. C.W. Carter, doing business as Carter's Pest Control, paid the Plaintiffs $25,000 to settle claims made against Carter's Pest Control in this action. The Potters claim that the Carter's Pest Control settlement was with Kevin, Harry, Marguerite, and Theodore Potter; therefore, they each received twenty-five percent of the settlement. The Potters contend that because Theodore Potter only received twenty-five percent of the $25,000 settlement, the court improperly offset the entire $25,000 against Theodore Potter's damage award.

The court, however, correctly determined that the entire $25,000 should be offset against Theodore Potter's judgment. The court reasoned that the relevant test was not how the Potters themselves allo-

7

cated the $25,000, "but rather what claims were available to them up against [Carter's Pest Control] and what [Carter's Pest Control] agreed to pay." The court further stated that "the fact that Theodore got only one-fourth of the twenty-five thousand dollars is a matter for the plaintiffs to resolve, but it does not affect the amount the defendants can offset in this action between them and Theodore involving the sale." The court's interpretation of the settlement agreement between Carter's Pest Control and the Potters was not clearly erroneous. Therefore, the court did not err in its determination of Theodore Potter's monetary award.

Accordingly, we affirm the court's orders granting the Defendants a directed verdict on the Potters' fraud claims, dismissing Harry and Marguerite Potter as Plaintiffs, awarding Theodore Potter $22,069.42 on the verdict for rescission, and awarding Kevin Potter $6000 in rescission damages. We further deny the Potters' motions requesting this court to take notice of a state court order in its state case. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED