486 S.E.2d 14

**LIFSCHULTZ FAST FREIGHT, INC., Appellant,**

**v.**

**HAYNSWORTH, MARION, McKAY & GUÉRARD, a South Carolina partnership, William P. Simpson, Jr., William M. Grant, Jr., Julius W. McKay, and John B. McLeod, jointly and severally, Respondents.**

**No. 2665.**

Court of Appeals of South Carolina.

Heard April 8, 1997.

Decided May 19, 1997.

Rehearing Denied June 18, 1997.

D. Dusty Rhoades, Charleston, for appellant.

Donald V. Richardson, III, Charles E. Carpenter, Jr., and Harley D. Ruff, of Richardson, Plowden, Carpenter & Robinson, Columbia, for respondents.

PER CURIAM.

Lifschultz Fast Freight, Inc. ("Lifschultz") brought this action for professional malpractice, breach of fiduciary duty, breach of contract, and promissory estoppel against the law

firm of Haynsworth, Marion, McKay & Guérard ("Haynsworth Firm"), as well as against William P. Simpson Jr., William M. Grant, Julius W. McKay, and John B. McLeod, jointly and severally, as members of the law firm. After much discovery, both Lifschultz and the defendants filed their respective motions for summary judgment. Lifschultz's motion was denied, while the defendants' motion was granted by order of the court filed October 31, 1994. Lifschultz appeals. We affirm.

## FACTS

Beginning in 1983, William J. Quirk, a full-time professor at the University of South Carolina School of Law, was of counsel to the law firm of McKay and Guérard.[1] In the fall of 1986, Quirk discussed a possible antitrust case with an acquaintance, David Lifschultz ("Mr. Lifschultz"), the president and chief executive officer of Lifschultz.[2] On December 1, 1986, McKay and Guérard merged into the Haynsworth Firm, with Quirk maintaining his of counsel arrangement. Shortly thereafter, Quirk offered to take the Lifschultz case on a twenty-five percent contingency fee basis. This offer was separate and apart from Quirk's of counsel arrangement.

On February 24, 1987, Quirk sent a letter to Mr. Lifschultz memorializing Quirk's agreement to handle the case. This letter, which was on Quirk's personal stationery and signed only by Quirk, sets forth the contract between Quirk and Lifschultz. It states in part:

> As per our conversation last Thursday, I write to confirm our agreement to represent Lifschultz Fast Freight, Inc., in the above-referenced litigation on a contingency fee basis, with all out-of-pocket expenses, experts' fees, and other direct costs of discovery and case preparation to be paid, as incurred, by your company.

---

1. In his of counsel capacity, Quirk was provided with an office, support staff, equipment, malpractice insurance, and free parking by the firm. Also, Quirk was entitled to compensation in an amount equal to $1,400 per month plus fifty percent of his fees in excess of that amount.

2. Lifschultz is a Delaware corporation with a principal place of business in New York City and was engaged in the business of providing general motor carrier freight service in thirty-five states, including South Carolina.

We have agreed your attorneys' fees will be twenty-five percent (25%) of the total of any recovery whether by settlement, verdict, judgment, or otherwise. Of course, in the event that there would be no recovery, there would be no attorneys' fees.

As you know, I will be working with Cam Lewis of Lewis, Babcock, Gregory & Pleicones, and Bill Simpson of the firm I am counsel to, Haynsworth, Marion, McKay & Guérard.

Quirk, not wanting to handle all of the legal work in the case under his of counsel arrangement with the Haynsworth Firm, proposed an arrangement by which he would handle the matter outside of his of counsel arrangement and would subcontract some of the legal work in the case to the Haynsworth Firm and the firm of Lewis, Babcock, Gregory & Pleicones ("Lewis Firm"), who would share in Quirk's contingency fee. Specifically, the parties agreed that the twenty-five percent contingency fee would be split so as to give Quirk, the Haynsworth Firm, and the Lewis Firm each one-third of twenty-five percent.

In March 1987, the Haynsworth Firm accepted and began legal representation of Lifschultz as plaintiff in the matter of *Lifschultz Fast Freight, Inc. v. Consolidated Freightways Corp. of Delaware, Yellow Freight Systems, Inc., & Roadway Express, Inc.*, No. 6:87-477-17, filed in the United States District Court for the District of South Carolina, Greenville division.[3]

On December 22, 1987, however, Simpson, Grant, McKay, and McLeod appeared as individual attorneys and agents or representatives of the Haynsworth Firm at a hearing before United States District Court Judge Joseph F. Anderson on the defendants' request to withdraw as counsel to Lifschultz. The Haynsworth Firm sought to withdraw on the basis that it could no longer work effectively with Quirk, who had severed his relationship with the firm under unpleasant circumstances.

Lifschultz, through Quirk, Lewis, and attorney Irwin Zatz, of the Chicago firm of Arvey, Hodes, Costello & Burman,

---

**3.** The case may now be found at *Lifschultz Fast Freight, Inc. v. Consolidated Freightways Corp. of Delaware*, 805 F.Supp. 1277 (D.S.C.1992), aff'd, 998 F.2d 1009 (4th Cir.), *cert. denied*, 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993).

adamantly objected to the request by the defendants to withdraw. Specifically, Lifschultz asserted that it would suffer a financial hardship if the defendants were allowed to withdraw because other law firms would not be willing to represent Lifschultz on the same financial basis as had the defendants; instead, new counsel would require Lifschultz to pay an hourly fee. Further, Quirk and Lewis asserted they would be unable to fulfill the responsibilities of representing Lifschultz in the underlying case by themselves without the support of a large firm like the Haynsworth Firm.

After hearing argument, the United States District Court granted the defendants' request to withdraw from the case, noting:

> There may be a contractual obligation to continue to defend, but I don't believe that's properly before me. And if there is such an obligation, that can be dealt with appropriately. There are two other very fine lawyers in the case. And I understand, Mr. Lewis, that that's not saying that we have the manpower or the paper pushers or the paralegals to do the support work you need, but it does appear that there are other firms who would take the case on an hourly basis. Although it is not clear whether that's feasible or whether the client will wish to pursue it, I feel like it's not a situation where the law firm is actually walking out on the client, leaving the client totally unrepresented.

Lifschultz asserts it then attempted to find and retain the services of another law firm on the same or similar financial terms as the representation offered by the defendants, but it could not and was forced to hire Patton, Boggs & Blow ("Patton Firm") of Washington, D.C., to take the place of the Haynsworth Firm.[4] In a new arrangement among Lifschultz, Quirk, the Lewis Firm, and the Patton Firm, Lifschultz bargained for and Quirk relinquished the one-third of twenty-five

---

4. In a letter from Lewis to Mr. Lifschultz dated November 20, 1987, four days before Lifschultz filed an objection to Haynsworth's motion to withdraw, Lewis explains that Lifschultz has agreed that the Patton Firm will be taking over Haynsworth's responsibilities and billing at an hourly rate. During the hearing on Haynsworth's motion to withdraw, when asked by the court whether Lifschultz had explored the possibility of getting another large firm to step in under a contingency fee arrangement, Lifschultz's counsel responded, "Not yet we haven't, no."

percent contingency fee that he previously had allocated to the Haynsworth Firm, and Lifschultz agreed to pay the Patton Firm on an hourly rate basis.

Eventually, Lifschultz lost the underlying case on summary judgment, and the appeal process terminated in 1993 with no award or settlement to Lifschultz. The Haynsworth Firm never sought nor received a fee for the work it performed on the case. The Patton Firm's hourly fees to Lifschultz were in excess of $1.3 million.

## TRIAL COURT'S ORDER

The trial court granted summary judgment against Lifschultz on the following grounds: (1) Lifschultz had no contract with the Haynsworth Firm because its contract was with Quirk and the Haynsworth Firm was a mere subagent of Lifschultz; Lifschultz was not in privity of contract with the Haynsworth Firm; (2) Judge Anderson's unappealed ruling that the Haynsworth Firm had good cause to withdraw is the law of this case; (3) Lifschultz has sustained no recoverable damages since its case was not meritorious; and (4) Lifschultz severed its attorney-client relationship with the Haynsworth Firm when it hired the Patton Firm on an hourly basis in exchange for the one-third of twenty-five percent of the fee that had been allocated to the Haynsworth Firm without making any real effort to replace the Haynsworth Firm on a contingency fee basis.

## LAW/DISCUSSION

### I.

Lifschultz first argues the trial court erred in denying its request to amend its complaint so as to clarify that its cause of action for breach of contract was for breach of either an express or an implied contract.

Rule 15, SCRCP, provides that a party may amend his pleading by leave of court and leave shall be freely given when justice so requires and does not prejudice any other party. However, a complaint "cannot be amended to state a new or different cause of action after the statute of limitations has

run." *Scott v. McCain,* 272 S.C. 198, 202, 250 S.E.2d 118, 121 (1978).

■ Here, the trial court left open the question of whether causes of action for breach of express or implied contracts are distinct and must be pleaded separately. Nevertheless, the court denied the motion to amend "since any additional cause of action in contract would be time-barred." Lifschultz does not challenge the trial court's statute of limitations determination, but argues only that the amended complaint did not allege any new causes of action. Assuming *arguendo* that Lifschultz is correct, it was not prejudiced by the trial court's denial of its motion. *See JKT, Co. v. Hardwick,* 274 S.C. 413, 265 S.E.2d 510 (1980) (an error not shown to be prejudicial does not constitute grounds for reversal).

## II.

Lifschultz next argues the trial court erred in granting the defendants' motion for summary judgment concerning its causes of action for negligence, breach of fiduciary duty, and breach of contract, claiming there was a genuine issue of material fact of whether the Haynsworth Firm committed legal malpractice. Lifschultz also argues the trial court erred in granting summary judgment to the defendants on its promissory estoppel cause of action, claiming the Haynsworth Firm breached its promise to represent Lifschultz in the underlying matter. We disagree.

■ An attorney's withdrawal from a case with the court's permission and in accordance with applicable rules does not form the basis of either a malpractice or breach of contract cause of action. *Washington v. Rucker,* 202 Ga.App. 888, 415 S.E.2d 919 (1992) (where district court's ruling permitting attorney to withdraw from the case was not appealed, such withdrawal could not form the basis of a legal malpractice claim); *Lott v. Ayres,* 611 S.W.2d 473 (Tex.Civ.App.1980) (attorney's withdrawal from case upon discovery of a probable conflict of interest did not constitute legal malpractice because attorney had a right and perhaps a duty to withdraw).

■ Here, Lifschultz does not allege that the Haynsworth Firm failed to follow the disciplinary rules in seeking and

gaining permission of the district court to withdraw. Rather, the basis for Lifschultz's argument with regard to all three of these causes of action is that the Haynsworth Firm withdrew as Lifschultz's counsel without good cause. However, because Judge Anderson's ruling entitling the Haynsworth Firm to withdraw from the case has not been appealed, it is now the law of this case. *Matheson v. McCormac*, 187 S.C. 260, 196 S.E. 883 (1938) (an appealable order from which no appeal is taken becomes the law of the case in all subsequent proceedings involving the same parties and the same subject matter); *Professional Bankers Corp. v. Floyd*, 285 S.C. 607, 331 S.E.2d 362 (Ct.App.1985).

## III.

Even were it the case that the evidence in this record presented a genuine issue of material fact as to whether the Haynsworth Firm's withdrawal was wrongful, we would still hold as a matter of law that the Haynsworth Firm's withdrawal did not proximately cause Lifschultz to suffer any damages.

In tort actions, damages may be recovered for all injuries that proximately follow, whether or not such injuries could have been anticipated or contemplated. In breach of contract actions, only such damages as may reasonably be supposed to have been in the contemplation of both parties at the time the contract was made may be collected. *Hutson v. Continental Assurance Co.*, 269 S.C. 322, 237 S.E.2d 375 (1977).

For an act to be a proximate cause of an injury, the injury must be a foreseeable consequence of the act. *Wallace v. Owens–Illinois, Inc.*, 300 S.C. 518, 389 S.E.2d 155 (Ct.App. 1989). The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained of act. *Id.* The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability. *Stone v. Bethea*, 251 S.C. 157, 161 S.E.2d 171 (1968). When the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the

injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause. *Id.*

Under either contract or tort causes of action, there is no genuine issue of material fact on the issue of damages. Lifschultz claims that the Haynsworth Firm's withdrawal caused it to hire substitute counsel at an hourly rate. The uncontroverted evidence in this case, however, is that the Haynsworth Firm's withdrawal from the case did not affect Lifschultz's twenty-five percent contingency fee agreement with Quirk. Quirk still had a duty to prosecute the case on Lifschultz's behalf. Therefore, Lifschultz's decision to renegotiate its contract with Quirk and agree to incur an hourly fee and be charged a lower contingency fee was completely its own.

Moreover, as a matter of law, Lifschultz's financial loss was not a foreseeable result of the Haynsworth Firm's withdrawal, and certainly not one contemplated by the parties when they entered into the alleged contract. Even assuming it were foreseeable Lifschultz and Quirk would choose to renegotiate their fee arrangement following the Haynsworth Firm's withdrawal, no evidence in the record indicates that Lifschultz's expected returns after legal fees in the underlying action were at all reduced by its switch to a partial hourly-fee agreement. Switching fee structures was a gamble that, had Lifschultz won, could have resulted in a great financial benefit for Lifschultz. Now that Lifschultz has lost its case, it cannot be heard to claim it was the Haynsworth Firm's withdrawal that caused it to incur the Patton Firm's hourly fees.

For all of the foregoing reasons, the trial court's grant of summary judgment is affirmed.

**AFFIRMED.**

CURETON, ANDERSON, and STILWELL, JJ., concur.